PER CURIAM.
This disciplinary proceeding is before us upon the complaint of The Florida Bar and the report of the referee. We have jurisdiction. Art. V, § 15, Fla. Const. Neither party seeks review of the referee’s report. We therefore adopt the referee’s findings of fact and approve the recommended discipline of disbarment pursuant to Florida Bar Integration Rule, article XI, Rule 11.-09(3)(f). We set forth the referee’s report in its entirety in order that others may be deterred from similar unethical conduct.
REPORT OF REFEREE
A. SUMMARY OF PROCEEDINGS: The undersigned was appointed as Referee to conduct disciplinary proceedings according to Article XI of the Integration Rule of The Florida Bar. Hearings were held on November 25, 1985 and on April 28, 1986. The Pleadings, Notice, Motions, Orders, Transcripts and Exhibits, all of which constitute the record1 in this case, are forwarded.
The following attorneys appeared as Counsel for the parties:
For The Florida Bar: Diane Victor Kuen-zel and Thomas J. Roehn
For the Respondent: Frank Ragano
B. FINDINGS OF FACT AS TO EACH ITEM OF MISCONDUCT OF WHICH THE RESPONDENT IS CHARGED: After considering all the pleadings and evidence before me, pertinent portions of which are commented upon below, I find:
AS TO COUNT I
1. Respondent is a member of The Florida Bar subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. From January 1,1982, until his resignation from the judiciary on August 3, 1983, Respondent served as Chief Judge of five judges serving in the Criminal Division for the Thirteenth Judicial Circuit, Hillsbor-ough County.
3. One of the five judges in Respondent’s division, Judge Richard Leon, was removed as a circuit court judge by the Supreme Court on October 20, 1983 and temporarily suspended from The Florida Bar on January 11,1984, following an adjudication of guilt on one count of perjury and two counts of official misconduct for his participation in matters connected to the allegations contained herein.
4. In 1980, Alisa Dean Avery was charged with trafficking in cocaine, possession of pyrroledine and delivery and possession of cocaine by the State Attorney in Hillsborough County in Case Numbers 80-9781 and 81-3103, State v. Alisa Dean *1243 Avery. The trafficking charge carried a three year minimum mandatory sentence.
5. Alisa Dean Avery’s cases were assigned to Respondent in his capacity as circuit court judge.
6. At some point in 1982, Respondent held several improper ex -parte communications with Judge Richard Leon concerning the disposition of Miss Avery’s case.
7. Respondent knew that Circuit Court Judge Richard Leon was a friend of Mr. Avery, the Defendant’s father.
8. Respondent advised Judge Leon that Miss Avery should give the state “substantial assistance” by making charges against other individuals and thereby obtain from the State Attorney a dismissal of the trafficking charge which required a three year minimum mandatory sentence.
9. Respondent further advised Judge Leon that if the trafficking charge was dropped, the sentence would then be within the discretion of the judge. Respondent stated to Judge Leon that it was his practice to give probation to first offenders in drug cases.
10. On October 11, 1982, a plea agreement was entered into by Cass Castillo of the State Attorney’s Office and Mr. Raymond LaPorte, the attorney representing Alisa Avery. As a result of the plea, the trafficking charge was dismissed against Miss Avery.
11. In return, Miss Avery pled guilty to one count of possession of pyrroledine and one count of delivery and possession of cocaine.
12. As a result of the plea, it was agreed that Miss Avery would serve three years in prison.
13. On October 11, 1982, Counsel for Miss Avery and Mr. Castillo appeared before Respondent for a hearing on the plea agreement.
14. Respondent accepted the plea agreement and was prepared to sentence Miss Avery to the agreed upon three years in prison. However, at Mr. LaPorte’s request, the sentencing was deferred until November 19, 1982, following the end of Miss Avery’s college term.
15. On November 19, 1982, Mr. La-Porte, Mr. Castillo and Miss Avery again appeared before Respondent for sentencing. Respondent sentenced Miss Avery to three years in prison, after which Respondent proceeded to hear other .cases docketed for the day.
16. Following the sentencing, Miss Avery’s father, who had been present at the hearing, asked for directions to Judge Leon’s chambers.
17. Thereafter, Judge Leon and Mr. Avery were observed in conversation outside the door of Judge Leon’s chambers. Immediately thereafter, Judge Leon appeared at the door of Respondent’s chambers and beckoned Respondent out of the room.
18. They stepped into the back room of Respondent’s chambers, at which time Judge Leon said, “I thought you said somebody would get probation if the trafficking charge was dropped. Why have you given Miss Avery three years?”
19. Respondent replied, “I will call her back and change it.”
20. Respondent then summoned Miss Avery and her attorney into his chambers and stated to Assistant State Attorney Michael Benito, who was present on behalf of Cass Castillo, that he had contacted Assistant State Attorney Norman Cannella. Respondent assured Mr. Benito that Mr. Can-nella had agreed to a change of sentence on behalf of the State.
21. Respondent then changed Miss Avery’s sentence from three years in prison to five years probation and a fine of $5,000 in costs.
22. At no time did the Respondent contact Mr. Cannella to inquire about a change of sentence for Alisa Avery.
23. Respondent altered Miss Avery’s sentence outside of the presence and knowledge of the State Attorney assigned to the case and without any factual showing or representation as to why the change was made.
*1244 24. The alteration of sentence occurred after an improper ex parte conversation with Judge Leon, who came to Respondent's chambers to speak on Miss Avery’s behalf.
25. At the time Respondent altered Miss Avery’s sentence, he knew or should have known that the alteration was contrary to a prior plea negotiation approved by the State Attorney’s Office.
AS TO COUNT II
26. Paragraphs 1 through 25 are incorporated by reference.
27. On February 27, 1983, the Tampa Tribune reported the change of sentence and that Miss Avery was a friend of Judge Richard Leon.
28. Following the release of the story, Judges Leon and Merckle agreed that in the event of any inquiries, they would each lie and state that they had never discussed Alice [sic] Avery’s case with one another.
29. On March 1, 1983, Thomas MacDonald of the Judicial Qualifications Commission was assigned to investigate the matters raised in the newspaper reports.
30. On March 15,1983, Respondent contacted Mr. MacDonald and arranged for an interview to discuss the matter.
31. On the following day, during the interview, Respondent, knowing that Mr. MacDonald was a member of the Judicial Qualifications Commission, stated that he had not talked with Judge Leon about Alisa Avery’s case prior to the date of the news story on February 27, 1983.
32. Later, after additional incidents were discussed in the newspaper, Respondent contacted Mr. MacDonald and asked for a second interview.
33. On March 24, 1983, Respondent stated that he had, in fact, discussed Alisa Avery’s case with Judge Leon on several occasions, including the day of the sentencing, November 19, 1983.
34. Mr. MacDonald stated that, as a former member of the Commission, Respondent knew or should have known that his untruthful statements would create serious problems for the Commission in its investigation.
35. Additionally, Respondent made similar untruthful statements to the media. The public disclosure of Respondent’s lies to the press, compounded by his former membership on the Judicial Qualifications Commission, not only impeded the investigation, but served to publicly discredit each member of the Commission and the integrity and effectiveness of the Commission as a whole.
C. RECOMMENDATIONS AS TO WHETHER OR NOT THE RESPONDENT SHOULD BE FOUND GUILTY: As to each count of the Complaint I make the following recommendations as to guilt or innocence:
AS TO COUNT I
36. I recommend that the Respondent be found not guilty of violating the following Integration Rules of The Florida Bar and/or Disciplinary Rules of the Code of Professional Responsibility:
a. Integration Rule, Article XI, Rule 11.02(1) — oath of an attorney.
b. DR 1-102(A)(6) — conduct that adversely reflects on fitness to practice law.
37. I recommend that the Respondent be found guilty of violating the following Integration Rules of The Florida Bar and/or Disciplinary Rules of the Code of Professional Responsibility:
a. DR 1-102(A)(4) — conduct involving dishonesty, deceit, or misrepresentation.
b. Rule 11.02(2) — violation of the Code of Professional Responsibility.
c. Rule 11.02(3)(a) — commission of an act contrary to honesty, justice, or good morals.
AS TO COUNT II
38. I recommend that Respondent be found not guilty of violating the following Integration Rule of The Florida Bar: Article XI, Rule 11.02(1) — violation of oath of an attorney.
*1245 39. I recommend that the Respondent be found guilty of violating the following Integration Rules of The Florida Bar and/or Disciplinary Rules of the Code of Professional Responsibility:
a. DR 1-102(A)(4) — conduct involving dishonesty, deceit, or misrepresentation.
b. DR 1-102(A)(5) — conduct that is prejudicial to the administration of justice.
c. DR 1-102(A)(6) — conduct that adversely reflects on fitness to practice law.
d. Rule 11.02(2) — violation of the Code of Professional Responsibility.
e. Rule 11.02(3)(a) — commission of an act contrary to honesty, justice, or good morals.
D. RECOMMENDATION AS TO DISCIPLINARY MEASURES TO BE APPLIED:
I recommend that the Respondent be disbarred from the practice of law in Florida. At the time of the commission of the acts and violations found in this Report, Respondent held a high position of public trust as a Circuit Court Judge. As both lawyer and judge, the Respondent was expected to conduct himself in the highest ethical manner. By agreeing to alter a sentence after accepting an agreed disposition and then lying about what he had done, the Respondent showed no concern for the ethical standards and the administration of justice both of which he swore to uphold. The Respondent’s conduct fell far short of the minimum standards established by the disciplinary rules.
E. PERSONAL HISTORY AND PAST DISCIPLINARY RECORD: After finding of guilty and prior to recommending discipline to be recommended pursuant to Rule 11.06(9)(a)(4), I considered the following personal history and prior disciplinary record of the Respondent, to wit:
1. Age: 55.
2. Year admitted to Bar: 1964.
3. Prior disciplinary convictions and disciplinary measures imposed: Order of Suspension by the Supreme Court dated October 29, 1985.
4. Other personal data: Respondent was a justice of the peace, county judge, and a circuit judge. Respondent was convicted of a felony by the Circuit Court of the Thirteenth Judicial Circuit.
F. STATEMENT OF COSTS AND MANNER IN WHICH COSTS SHOULD BE TAXED: I find the following costs were reasonably incurred by The Florida Bar:
Grievance Committee Level
Administrative Costs $150.00
Court Reporter 9/27/84 199.35
Court Reporter 10/5/84 67.60
Court Reporter 10/5/84 38.85
Court Reporter 11/2/84 102.50
Bar Counsel Costs 31.48
Investigator Costs 50.00
$639.68
Referee Level
Administrative Costs 150.00
Court Reporter 10/18/85 20.00
Court Reporter 11/25/85 695.24
$865.24
TOTAL COSTS TO DATE: $1,504.92
DATED: July 1,1986.
Arden Mays Merckle is hereby disbarred from the practice of law in Florida, effective immediately. Judgment for costs in the amount of $1,504.92 is hereby entered against the respondent, for which sum let execution issue.
It is so ordered.
MCDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.